AO 93 (Rev. 12/09) Search and Seizure Warrant    (USAO CDCA Rev. 01/2013)

# UNITED STATES DISTRICT COURT
## for the
### Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>Two digital devices seized on September 27, 2017 and one digital device seized on September 29, 2017, all three of which are currently in the custody of the Federal Bureau of Investigationnt | )<br>)<br>)  Case No.   2:17-MJ-2472<br>)<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:        Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Central_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachments A-1 and A-2

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before    14 days from the date of its issuance
                                                                                                                            *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.        ❑ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
on duty at the time of the return through a filing with the Clerk's Office.
                                          *(name)*

❑ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*  ❑ for _____ days *(not to exceed 30).*
                                                              ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued:    10/05/2017 at 1:30 p.m.                    /s/
                                                                                                        *Judge's signature*

City and state:    Los Angeles, California                    Hon. John McDermott, U.S. Magistrate Judge
                                                                                              *Printed name and title*

SAUSA: [Kyle Ryan x3159]

AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>2:17-MJ-2472 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

[Please provide a description that would be sufficient to demonstrate that the items seized fall within the items authorized to be seized pursuant to the warrant (e.g., type of documents, as opposed to "miscellaneous documents") as well as the approximate volume of any documents seized (e.g., number of boxes). If reference is made to an attached description of property, specify the number of pages to the attachment and any case number appearing thereon.]

**Certification**  (by officer present during the execution of the warrant)

*I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and was returned along with the original warrant to the designated judge through a filing with the Clerk's Office.*

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

SAUSA: [Kyle Ryan x3159]

**ATTACHMENT A-1**

<u>DEVICES TO BE SEARCHED</u>

The following digital devices (the "SUBJECT DEVICES"), seized on September 27, 2017, and currently maintained in the custody of the Federal Bureau of Investigation in Santa Maria, California:

1.   Black and bronze LG cellular telephone, serial number 708CYXM274666, seized from SCALES's right front pocket by FBI SA B. Platts, on September 27, 2017.

2.   Scandisk 8 gig micro SD card located loose under the cover of the black and bronze LG cellular telephone, seized from SCALES's right front pocket by FBI SA B. Platts, on September 27, 2017.

**ATTACHMENT A-2**

<u>DEVICES TO BE SEARCHED</u>

The following digital device seized on September 29, 2017, and currently in custody of the Federal Bureau of Investigation in Santa Maria, California:

1.    Black LG cellular telephone, serial number 610VTZC296405, seized from DZULOY's pants pocket by Oxnard Police Department Officer Zack Stiles, on September 29, 2017.

**ATTACHMENT B**

I. <u>ITEMS TO BE SEIZED</u>

1.   Fruits, evidence, and instrumentalities of violations of 21 U.S.C. §§ 846 (Conspiracy) and 841(a)(1) (Possession with Intent to Distribute Controlled Substances) (collectively, the "SUBJECT OFFENSES"), namely:

a.   Records, documents, programs, applications and materials, or evidence of the absence of same, sufficient to show call log information, including all telephone numbers dialed from any of the digital devices and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls;

b.   Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show SMS text, email communications or other text or written communications sent to or received from any of the digital devices and which relate to the above-named violations;

c.   Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show instant and social media messages (such as Facebook, Facebook Messenger, Snapchat, FaceTime, Skype, and WhatsApp), SMS text, email communications, or other text or written communications sent to or received from any digital device and which relate to the above-named violations;

d.   Records, documents, programs, applications, materials, or conversations relating to the trafficking of drugs, including ledgers, pay/owe records, distribution or

i        **Instrumentality Protocol**

customer lists, correspondence, receipts, records, and documents noting price, quantities, and/or times when drugs were bought, sold, or otherwise distributed;

  e. Audio recordings, pictures, video recordings, or still captured images relating to the possession or distribution drugs and the collection or transfer of the proceeds of the above-described offenses;

  f. Contents of any calendar or date book;

  g. Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, destinations, origination points, and other locations; and

  h. Any SUBJECT DEVICE used to facilitate the SUBJECT OFFENSES (and forensic copies thereof).

  i. With respect to any SUBJECT DEVICE used to facilitate the above-listed violations or containing evidence falling within the scope of the foregoing categories of items to be seized:

   i. evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

   ii. evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software,

as well as evidence of the presence or absence of security software designed to detect malicious software;

    iii. evidence of the attachment of other devices;

    iv. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

    v. evidence of the times the device was used;

    vi. passwords, encryption keys, and other access devices that may be necessary to access the device;

    vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

    viii. records of or information about Internet Protocol addresses used by the device;

   j. records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses..

## II. <u>SEARCH PROCEDURE FOR DIGITAL DEVICES</u>

  2. In searching the SUBJECT DEVICES (or forensic copies thereof), law enforcement personnel executing this search warrant will employ the following procedure:

    a. Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") may search any SUBJECT DEVICE capable of being used to facilitate

       iii  **Instrumentality Protocol**

the above-listed violations or containing data falling within the scope of the items to be seized.

      b.    The search team will, in its discretion, either search each SUBJECT DEVICE where it is currently located or transport it to an appropriate law enforcement laboratory or similar facility to be searched at that location.

      c.    The search team shall complete the search of the SUBJECT DEVICES as soon as is practicable but not to exceed 120 days from the date of issuance of the warrant.  The government will not search the digital device(s) beyond this 120-day period without first obtaining an extension of time order from the Court.

      d.    The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

      i.    The search team may subject all of the data contained in each SUBJECT DEVICE capable of containing any of the items to be seized to the search protocols to determine whether the SUBJECT DEVICE and any data thereon falls within the scope of the items to be seized.  The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the scope of the items to be seized.

      ii.    The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

iii.  The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

e.  If the search team, while searching a SUBJECT DEVICE, encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search of that SUBJECT DEVICE pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

f.  If the search determines that a SUBJECT DEVICE does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the SUBJECT DEVICE and delete or destroy all forensic copies thereof.

g.  If the search determines that a SUBJECT DEVICE does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

h.  If the search determines that the SUBJECT DEVICE is (1) itself an item to be seized and/or (2) contains data falling within the list of items to be seized, the government may retain forensic copies of the SUBJECT DEVICE but may not access data falling outside the scope of the items to be seized

v       **Instrumentality Protocol**

(after the time for searching the device has expired) absent
further court order.

   i. The government may retain a SUBJECT DEVICE itself
until further order of the Court or one year after the
conclusion of the criminal investigation or case (whichever is
latest), only if the SUBJECT DEVICE is determined to be an
instrumentality of an offense under investigation or the
government, within 14 days following the time period authorized
by the Court for completing the search, obtains an order from
the Court authorizing retention of the SUBJECT DEVICE (or while
an application for such an order is pending).  Otherwise, the
government must return the SUBJECT DEVICE.

   j. After the completion of the search of the SUBJECT
DEVICE(S), the government shall not access digital data falling
outside the scope of the items to be seized absent further order
of the Court.

  3. The special procedures relating to digital devices
found in this warrant govern only the search of digital devices
pursuant to the authority conferred by this warrant and do not
apply to any search of digital devices pursuant to any other
court order.

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| In the Matter of the Search of<br><br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Two digital devices seized on September 27, 2017 and one<br>digital device seized on September 29, 2017, all three of<br>which are currently in the custody of the Federal Bureau of<br>Investigation | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No.  2:17-MJ-2472 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachments A-1 and A-2

located in the _____Central_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1) | Possession with Intent to Distribute and<br>Distribution of a Controlled Substance<br>Conspiracy to Possess with Intent to Distribute |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____/s/_____
*Applicant's signature*

Sean D. Lusk, Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __10/05/2017__

_____/s/_____
*Judge's signature*

City and state: Los Angeles, California

Hon. John McDermott, U.S. Magistrate Judge
*Printed name and title*

SAUSA: Kyle Ryan x3159

**ATTACHMENT A-1**

DEVICES TO BE SEARCHED

The following digital devices (the "SUBJECT DEVICES"), seized on September 27, 2017, and currently maintained in the custody of the Federal Bureau of Investigation in Santa Maria, California:

1.    Black and bronze LG cellular telephone, serial number 708CYXM274666, seized from SCALES's right front pocket by FBI SA B. Platts, on September 27, 2017.

2.    Scandisk 8 gig micro SD card located loose under the cover of the black and bronze LG cellular telephone, seized from SCALES's right front pocket by FBI SA B. Platts, on September 27, 2017.

**ATTACHMENT A-2**

<u>DEVICES TO BE SEARCHED</u>

The following digital device seized on September 29, 2017, and currently in custody of the Federal Bureau of Investigation in Santa Maria, California:

1.    Black LG cellular telephone, serial number 610VTZC296405, seized from DZULOY's pants pocket by Oxnard Police Department Officer Zack Stiles, on September 29, 2017.

**ATTACHMENT B**

## I. <u>ITEMS TO BE SEIZED</u>

1. Fruits, evidence, and instrumentalities of violations of 21 U.S.C. §§ 846 (Conspiracy) and 841(a)(1) (Possession with Intent to Distribute Controlled Substances) (collectively, the "SUBJECT OFFENSES"), namely:

   a. Records, documents, programs, applications and materials, or evidence of the absence of same, sufficient to show call log information, including all telephone numbers dialed from any of the digital devices and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls;

   b. Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show SMS text, email communications or other text or written communications sent to or received from any of the digital devices and which relate to the above-named violations;

   c. Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show instant and social media messages (such as Facebook, Facebook Messenger, Snapchat, FaceTime, Skype, and WhatsApp), SMS text, email communications, or other text or written communications sent to or received from any digital device and which relate to the above-named violations;

   d. Records, documents, programs, applications, materials, or conversations relating to the trafficking of drugs, including ledgers, pay/owe records, distribution or

<span style="float:right">i      **Instrumentality Protocol**</span>

customer lists, correspondence, receipts, records, and documents noting price, quantities, and/or times when drugs were bought, sold, or otherwise distributed;

     e.   Audio recordings, pictures, video recordings, or still captured images relating to the possession or distribution drugs and the collection or transfer of the proceeds of the above-described offenses;

     f.   Contents of any calendar or date book;

     g.   Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, destinations, origination points, and other locations; and

     h.   Any SUBJECT DEVICE used to facilitate the SUBJECT OFFENSES (and forensic copies thereof).

     i.   With respect to any SUBJECT DEVICE used to facilitate the above-listed violations or containing evidence falling within the scope of the foregoing categories of items to be seized:

     i.   evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

     ii.  evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software,

as well as evidence of the presence or absence of security software designed to detect malicious software;

    iii. evidence of the attachment of other devices;

    iv. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

    v. evidence of the times the device was used;

    vi. passwords, encryption keys, and other access devices that may be necessary to access the device;

    vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

    viii.  records of or information about Internet Protocol addresses used by the device;

  j. records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses..

## II. <u>SEARCH PROCEDURE FOR DIGITAL DEVICES</u>

  2. In searching the SUBJECT DEVICES (or forensic copies thereof), law enforcement personnel executing this search warrant will employ the following procedure:

    a. Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") may search any SUBJECT DEVICE capable of being used to facilitate

iii  <b>Instrumentality Protocol</b>

the above-listed violations or containing data falling within the scope of the items to be seized.

     b.   The search team will, in its discretion, either search each SUBJECT DEVICE where it is currently located or transport it to an appropriate law enforcement laboratory or similar facility to be searched at that location.

     c.   The search team shall complete the search of the SUBJECT DEVICES as soon as is practicable but not to exceed 120 days from the date of issuance of the warrant.  The government will not search the digital device(s) beyond this 120-day period without first obtaining an extension of time order from the Court.

     d.   The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

          i.   The search team may subject all of the data contained in each SUBJECT DEVICE capable of containing any of the items to be seized to the search protocols to determine whether the SUBJECT DEVICE and any data thereon falls within the scope of the items to be seized.  The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the scope of the items to be seized.

          ii.  The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

iii. The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

e. If the search team, while searching a SUBJECT DEVICE, encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search of that SUBJECT DEVICE pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

f. If the search determines that a SUBJECT DEVICE does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the SUBJECT DEVICE and delete or destroy all forensic copies thereof.

g. If the search determines that a SUBJECT DEVICE does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

h. If the search determines that the SUBJECT DEVICE is (1) itself an item to be seized and/or (2) contains data falling within the list of items to be seized, the government may retain forensic copies of the SUBJECT DEVICE but may not access data falling outside the scope of the items to be seized

(after the time for searching the device has expired) absent further court order.

   i. The government may retain a SUBJECT DEVICE itself until further order of the Court or one year after the conclusion of the criminal investigation or case (whichever is latest), only if the SUBJECT DEVICE is determined to be an instrumentality of an offense under investigation or the government, within 14 days following the time period authorized by the Court for completing the search, obtains an order from the Court authorizing retention of the SUBJECT DEVICE (or while an application for such an order is pending).  Otherwise, the government must return the SUBJECT DEVICE.

   j. After the completion of the search of the SUBJECT DEVICE(S), the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

  3. The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.

**AFFIDAVIT**

I, Sean D. Lusk, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of an application for a warrant to search the following digital devices for evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 846 (Conspiracy) and 841(a)(1) (Possession with Intent to Distribute and Distribution of Controlled Substances), as described more fully in Attachment B:

a.    A black and bronze LG cell phone seized from WILLIAM ANTHONY SCALES ("SCALES") (the "SCALES PHONE") and a Scandisk 8 gig micro SD card found under the cover of the SCALES PHONE (the "SCALES SD CARD").  The SCALES PHONE and the SCALES SD CARD are further described below and in Attachment A-1; and

b.    A Black LG cell phone seized from LUIS ENRIQUE DZULOY ("DZULOY") (the "DZULOY PHONE") as further described below and in Attachment A-2.

2.    Attachments A-1, A-2, and B are incorporated herein by reference.  The SCALES PHONE, the SCALES SD CARD, and DZULOY PHONE are referred to collectively as the "SUBJECT DEVICES."

3.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, my review of law enforcement incident reports, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to

set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND FOR FBI TASK FORCE OFFICER SEAN D. LUSK

4.    I am employed as a full-time, sworn law enforcement officer for the California Highway Patrol ("CHP") and have been for the past 18 years.  I am currently assigned to the Coastal Division Investigative Services Unit.  I am also currently a Task Force Officer ("TFO") and Special Federal Officer with the Federal Bureau of Investigation ("FBI") assigned to the Central Coast Safe Streets Task Force.  While assigned to this unit, my primary responsibility is to investigate and assist other officers and allied agencies with in-depth investigations involving crimes including but not limited to vehicle theft, criminal street gangs, weapons, and drug violations.  I have investigated or assisted in numerous cases involving drug trafficking and have reviewed evidence of drug trafficking from digital devices seized from drug traffickers.

5.    I attended and graduated from the California Highway Patrol Academy and hold Basic, Intermediate, and Advanced Certificates from California Peace Officer Standards and Training.

6.    I have completed a 24-hour street gang class.  I have completed over 90 hours of street and prison gang training, including the following: identification of gang members, gang culture, gangs in the military, criminal street gangs, outlaw

motorcycle gangs, local gangs, transnational gangs, drug sales to benefit gangs, prison gangs, and gang structure. I have read books, papers, and magazines relating to the field of gangs and talked with other officers and experts in the field of gangs.

7. I have completed an 80-hour Drug Recognition Expert course certified by the International Association of Chiefs of Police. Upon completion of classroom instruction, I completed 24 hours of infield drug evaluations in the south Sacramento area.

8. I have completed over 80 hours of narcotics and criminal interdictions training relating to the transportation, concealment, trends, and sales of illegal drug and other criminal activities. I have spoken on numerous occasions with other officers and experts in the field of drug interdiction with regards to current trends on drug sales and trafficking.

### III. SUMMARY OF PROBABLE CAUSE

9. On August 24, 2017, CHP stopped DZULOY, SCALES, and J.M. and seized approximately 2,458.3 grams of methamphetamine and three digital devices. SCALES and DZULOY were arrested pursuant to a federal arrest warrants on September 27 and 29, 2017, respectively. At the time of their arrests, FBI agents and Oxnard Police Department ("OPD") Officers found new digital devices on them (the SUBJECT DEVICES) that, based on my training and experience, I believe will contain evidence of drug trafficking, as further described below.

## IV. <u>STATEMENT OF PROBABLE CAUSE</u>

10.   Based on my training and experience, my review of law enforcement reports, my personal observations, and my discussions with other law enforcement agents, I have learned the following:

11.   On August 24, 2017, CHP Officer E. Moore conducted a traffic stop of a black 2013 Toyota Avalon (the "Avalon") on the U.S. 101 freeway in Santa Barbara County for violations of the California Vehicle Code.  DZULOY was driving the Avalon and SCALES was sitting in the back seat.  The registered owner of the Avalon, J.M., was in the right front passenger seat.

12.   During a consensual search of the Avalon, Officer Moore found approximately 2,458.3 grams of methamphetamine hidden in the trunk.  Three digital devices (not the SUBJECT DEVICES) were also seized during the August 24, 2017 investigation.

13.   On September 25, 2017, The Honorable Louise A. LaMothe, U.S. Magistrate Judge, issued a search warrant for the three digital devices seized on August 24, 2017.  I have not reviewed those three digital devices.  Also on September 25, 2017, The Honorable Louise A. LaMothe, U.S. Magistrate Judge, found probable cause supported a criminal complaint, and issued arrest warrants for DZULOY and SCALES in case number 17-MJ-02387.

Instrumentality Protocol

**A.**  **Arrest of SCALES and Discovery of the SCALES PHONE and the SCALES SD CARD**

14.  On September 27, 2017, SCALES was arrested based on the federal arrest warrant outside the Santa Maria Superior Court.  FBI Special Agent ("SA") B. Platts removed personal items from SCALES's person in preparation for his transport and booking at the Metropolitan Detention Center.  SA Platts found a black and bronze LG cell phone, the SCALES PHONE, in SCALES's right front pants pocket.  SA Platts seized the SCALES PHONE but, at SCALES's request, SA N. McPherson gave the remainder of SCALES' personal property to R.A. on September 27, 2017.  While collecting the serial number to inventory the SCALES PHONE, I removed the rear cover.  Under the rear cover, I saw a loose, partially broken, micro SD card, the SCALES SD CARD.

**B.**  **Arrest of DZULOY and Discovery of the DZULOY PHONE**

15.  On September 29, 2017, DZULOY was arrested by the OPD and FBI SA J. Bennett for a domestic violence and terrorist threats probable cause want issued by the Oxnard Police Department.  During a search of DZULOY in preparation for his transport and booking at the Ventura County Jail, OPD Officer Zack Stiles found and seized a black LG cellular telephone (the DZULOY PHONE) in DZULOY's pants pocket.  SA Bennett later took possession of the DZULOY PHONE.

**V.**  **TRAINING AND EXPERIENCE REGARDING DRUG TRAFFICKING**

16.  Based on my training and experience and familiarity with investigations into drug trafficking conducted by other law enforcement agents, I know the following:

a.    Based on my training and experience, I know that drug couriers who have shipments of drugs seized from them often attempt to contact co-conspirators, drug suppliers, and/or the intended recipient of the drugs to explain the loss of the drugs to law enforcement.  Based on my training and experience, I also know that drug traffickers often continue their illegal activities and communications with co-conspirators and co-defendants while out on bail after a drug trafficking arrest.  For those reasons, I believe that that evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 846 (Conspiracy) and 841(a)(1) (Possession with Intent to Distribute and Distribution of Controlled Substances), may be located on the SUBJECT DEVICES seized on September 27 and 29, 2017.

b.    Drug traffickers often maintain books, receipts, notes, ledgers, bank records, and other records relating to the manufacture, transportation, ordering, sale and distribution of illegal drugs.  The aforementioned records are often maintained where the drug trafficker has ready access to them, such as on their cell phones and other digital devices.

c.    Communications between people buying and selling drugs take place by telephone calls and messages, such as e-mail, text messages, and social media messaging applications, sent to and from cell phones and other digital devices.  This includes sending photos or videos of the drugs between the seller and the buyer, the negotiation of price, and discussion of whether or not participants will bring weapons to a deal.  In addition, it is common for people engaged in drug trafficking to

have photos and videos on their cell phones of drugs they or others working with them possess, as they frequently send these photos to each other and others to boast about the drugs or facilitate drug sales.

    d.   Drug traffickers often keep the names, addresses, and telephone numbers of their drug trafficking associates on their digital devices.  Drug traffickers often keep records of meetings with associates, customers, and suppliers on their digital devices, including in the form of calendar entries and location data.

    e.   It is common for drug traffickers to own multiple phones of varying sophistication and cost as a method to diversify communications between various customers and suppliers.  These phones range from sophisticated smart phones using digital communications applications such as Blackberry Messenger, WhatsApp, and the like, to cheap, simple, and often prepaid flip phones, known colloquially as "drop phones," for actual voice communications.

### VI. <u>TRAINING AND EXPERIENCE REGARDING DIGITAL DEVICES</u>

    17.  Based on my knowledge, training, and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know that it is not always possible to search digital devices for digital data in a single day or even over several weeks for a number of reasons, including the following:

    a.   Searching digital devices can be a highly technical process that requires specific expertise and

specialized equipment.  There are so many types of digital devices and software programs in use today that it takes time to conduct a thorough search.  In addition, it may be necessary to consult with specially trained personnel who have specific expertise in the type of digital device, operating system, and software application being searched.

b.   Digital data is particularly vulnerable to inadvertent or intentional modification or destruction. Searching digital devices can require the use of precise, scientific procedures that are designed to maintain the integrity of digital data and to recover "hidden," erased, compressed, encrypted, or password-protected data.  As a result, a controlled environment, such as a law enforcement laboratory or similar facility, is essential to conducting a complete and accurate analysis of data stored on digital devices.

c.   The SUBJECT DEVICES are modern cellular phones, which likely contain multiple gigabytes of storage.  A single megabyte of storage space is the equivalent of 500 double-spaced pages of text.  A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text.

d.   Electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet.[1]

---

[1] These statements do not generally apply to data stored in volatile memory such as random-access memory, or "RAM," which data is, generally speaking, deleted once a device is turned off.

**Instrumentality Protocol**

Electronic files saved to a hard drive can be stored for years with little or no cost.  Even when such files have been deleted, they can be recovered months or years later using readily-available forensics tools.  Normally, when a person deletes a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space, i.e., space on a hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space, for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a swap or recovery file.  Similarly, files that have been viewed on the Internet are often automatically downloaded into a temporary directory or cache.  The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently downloaded or viewed content.  Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits. Recovery of residue of electronic files from a hard drive requires specialized tools and a controlled laboratory environment.  Recovery also can require substantial time.

e.   Although some of the records called for by this warrant might be found in the form of user-generated documents

9         **Instrumentality Protocol**

(such as word processing, picture, and movie files), digital devices can contain other forms of electronic evidence as well. In particular, records of how a digital device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications and materials contained on the digital devices are, as described further in the attachments, called for by this warrant. Those records will not always be found in digital data that is neatly segregable from the hard drive image as a whole. Digital data on the hard drive not currently associated with any file can provide evidence of a file that was once on the hard drive but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave digital data on the hard drive that show what tasks and processes on the computer were recently used. Web browsers, e-mail programs, and chat programs often store configuration data on the hard drive that can reveal information such as online nicknames and passwords. Operating systems can record additional data, such as the attachment of peripherals, the attachment of USB flash storage devices, and the times the computer was in use. Computer file systems can record data about the dates files were created and the sequence in which they were created. This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations. Recovery of this data requires specialized tools and a

**Instrumentality Protocol**

controlled laboratory environment, and also can require substantial time.

f.    Further, evidence of how a digital device has been used, what it has been used for, and who has used it, may be the absence of particular data on a digital device.  For example, to rebut a claim that the owner of a digital device was not responsible for a particular use because the device was being controlled remotely by malicious software, it may be necessary to show that malicious software that allows someone else to control the digital device remotely is not present on the digital device.  Evidence of the absence of particular data on a digital device is not segregable from the digital device.  Analysis of the digital device as a whole to demonstrate the absence of particular data requires specialized tools and a controlled laboratory environment, and can require substantial time.

g.    Digital device users can attempt to conceal data within digital devices through a number of methods, including the use of innocuous or misleading filenames and extensions.  For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text.  Digital device users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form.  In addition, digital device users can conceal data within another seemingly unrelated and innocuous file in a

process called "steganography."  For example, by using steganography a digital device user can conceal text in an image file that cannot be viewed when the image file is opened. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. A substantial amount of time is necessary to extract and sort through data that is concealed, encrypted, or subject to booby traps, to determine whether it is evidence, contraband or instrumentalities of a crime.

18.  Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VII. <u>CONCLUSION</u>

19.  For the reasons detailed above, I respectfully submit there is probable cause to believe that the evidence, fruits,

///

///

///

and instrumentalities of the offenses described in Attachment B will be found on the digital devices described in Attachments A-1 and A-2.


                                                      /s/
_____
Sean D. Lusk
Federal Bureau of Investigation
Task Force Officer, TFO

Subscribed to and sworn before me
this  5th  day of October 2017.


                  /s/
_____
UNITED STATES MAGISTRATE JUDGE
JOHN E. MCDERMOTT